IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NAKYIA D. PARKER, | ) | CASE NO. 4:19CV599 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN BRIGHAM SLOAN, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Nakyia Parker ("Petitioner" or "Parker") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Parker is detained at the Lake Erie Correctional Institution, having been found guilty by a Trumbull County, Ohio, Court of Common Pleas jury of one count of having weapons under a disability and one count of possession of heroin.  *State v. Parker*, Case No. 13-CR-921 (Trumbull Cty. Common Pleas Ct., filed Aug. 17, 2016).  At sentencing, the trial court sentenced Parker to 2 years on the weapons count and 8 years on the possession of heroin count, to be served consecutively, for a total prison term of 10 years.  Doc. 7-1, p. 260.

On March 12, 2019, Parker filed his Petition for Writ of Habeas Corpus setting forth four grounds for relief.  Doc. 1, pp. 6-10.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Parker's grounds for relief are not cognizable, procedurally defaulted, and/or fail on the merits.  Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

1

of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Trumbull

County Court of Appeals, Eleventh Appellate District of Ohio:

{¶ 2} On October 12, 2013, at approximately 9:00 p.m., the Warren City Police Department received a call concerning multiple gunshots in the vicinity of Southern Boulevard on the city's northwest side. Multiple police officers were dispatched, including Sergeant Greg Coleman of the Emergency Services Division and Patrolman Trevor Sumption.

{¶ 3} As the officers arrived at a Southern Boulevard address, the department received another call regarding gunshots near 3126 Starlite Avenue, just around the corner from their Southern Boulevard location. The officers went to the Starlite residence, and as part of their initial investigation spoke with witnesses who said they were nearby when the gunshots rang out. One witness told Sergeant Coleman that the gunshots came from 3126 Starlite and were directed at his son, who immediately left the scene. The other witness told Patrolman Sumption that there was an exchange of gunfire from the homes at 3126 Starlite and 1341 Starlite, located cattycorner to each other.

{¶ 4} The officers found bullet casings in the street directly in front of 3126 Starlite. They also saw bullet holes in the exterior of the home and a vehicle in the driveway with its windows shot out.

{¶ 5} In combing the surrounding area, Patrolman Sumption found a key fob with an attached set of keys. The officer immediately pressed the panic button on the fob. Within moments, the officers received notice from dispatch that a panic alarm was sounding at 3126 Starlite.

{¶ 6} Multiple later arriving officers approached the residence and knocked on the two main doors. There was no response. Initially, they did not see anyone through the windows, but saw items on a kitchen table appearing to be illegal drugs. The officers also contacted a number of local hospitals to determine if anyone had recently sought treatment for gunshots.

{¶ 7} Unable to determine whether there was someone inside 3126 Starlite who might be injured, the officers sought and obtained the blessing of the city prosecutor to enter for the limited purpose of checking for injured. Officer Sumption used one of the found keys to open the back door. Moments before Officer Sumption entered the residence, another officer accompanying him saw a hand move one of the blinds in a corner window on the main floor, which turned out to be a child's bedroom.

{¶ 8} Once inside, the officers immediately announced who they were and demanded that anyone inside reveal themselves. Three men came up from the basement. After the men were taken outside, the officers called out again. This time, appellant appeared from the front of the home. He was immediately handcuffed and placed into a police cruiser.

{¶ 9} After appellant was in custody, the officers conducted a cursory search of the entire house for injured people. No others were found. However, the officers saw incriminating items in plain view, including, two firearms on a sofa in the living room, marijuana and heroin on the kitchen counter and table, a significant amount of cash in an open dresser drawer in one of the bedrooms, and a large television in the master bedroom with a surveillance system displaying the approach to both main doors.

{¶ 10} The prosecutor, thereafter, obtained a search warrant for 3126 Starlite. In executing the warrant, the officers found three firearms, one of which was in a closet in a child's bedroom at the left-back corner of the house where the officer saw a hand move the blind. The officers also found a large brick of heroin in the kitchen freezer and more than $43,000 in cash.

{¶ 11} Appellant was indicted on one count of having weapons while under a disability and one count of possession of heroin, with a forfeiture specification for the cash.

{¶ 12} Appellant moved to suppress all evidence obtained from the residence. Appellant primarily argued the officers lacked grounds to conduct the initial warrantless search for injured people. The state first maintained that appellant lacked standing to challenge the search due to lack of a reasonable expectation of privacy since he did not own the home or live there. The state, however, altered its posture upon learning that the officers found appellant's wallet in the master bedroom, along with his ID, and a "Direct TV" bill addressed to him at 3126 Starlite. Accordingly, a supplemental hearing was held. As part of its ensuing judgment overruling the motion to suppress, the trial court concluded that appellant had standing to contest the search because he had been staying at the home. Nevertheless, the court found the initial search valid under the "emergency aid" exception to the warrant requirement.

{¶ 13} A four-day jury trial was held. In addition to presenting the testimony of the four police officers involved in the searches, the state introduced tapes of telephone calls appellant made from the county jail immediately following his arrest. During the calls, he said that the officers used his key to enter the home and took all his money. Appellant also inquired about whether the officers found the drugs in the freezer, and refers to one of the found guns. Appellant did not present any evidence. The jury found him guilty on both charges and the forfeiture specification.

{¶ 14} At the sentencing hearing, the trial court made express findings under R.C. 2929.14(C)(4) warranting consecutive prison terms. The court found consecutive sentences necessary to adequately punish appellant and not disproportionate to both the seriousness of his conduct and the danger he poses to society. The court also found consecutive sentences necessary to adequately protect the public due to appellant's past

criminal history. Accordingly, the trial court imposed consecutive terms of eight years for possession and two years for having weapons under disability.

*State v. Parker*, 2018 WL 3832783, at *1-2 (Oh. Ct. App. Aug. 13, 2018).

### A. State Court Action

On February 5, 2014, a Trumbull County, Ohio grand jury indicted Parker on one count of having weapons while under a disability, R.C. 2923.13 (A)(3)&(B), and one count of possession of heroin, R.C. 2925.11(A)&(C)(6)(d), with a $43,400.00 forfeiture specification. Doc. 7-1, pp. 4-6.

In March 2014, Parker, through counsel, filed a motion to suppress evidence seized during police searches at the residential address, 3126 Starlite Drive.  Doc. 7-1, pp. 8-9.  The trial court held a hearing and found that, based on information currently available, Parker lacked standing to challenge the searches and dismissed his motion.  Doc. 7-2, pp. 3-4; Doc. 7-1, p. 10.

Thereafter, Parker filed a motion in limine and asked the trial court to suppress the evidence seized during police searches at the residential address, 3126 Starlite Drive, asserting that, based on Parker's jailhouse conversations, the state had acquired evidence that Parker was in control of the dwelling at the time of the search, i.e., he had standing to challenge the search. Doc. 7-1, p. 10.  On August 8, 2014, the trial court held a suppression hearing.  Doc. 7-1, p. 12; Doc. 7-2, p. 3.  The parties filed post-hearing briefs (Doc. 7-1, pp. 13-27) and the trial court found Parker had standing to challenge the searches but overruled his motion to suppress.  Doc. 7-1, pp. 39-45.

On March 30, 2015, at Parker's request, the trial court discharged his attorney; shortly thereafter a new attorney filed a notice of appearance as trial counsel.  Doc. 7-1, pp. 46-47.

Parker, through counsel, filed a motion in limine objecting to introduction of evidence of "the Bureau of Criminal Identification & Investigation (BCI) Laboratory Report dated October

24, 2013" and "any items listed in said report and testimony proffered by BCI Forensic Scientist Keith Taggart, who certified its findings." Doc. 7-1, p. 49. Parker, through counsel, also filed a motion to readdress the issues raised in his prior motion to suppress. Doc. 7-1, pp. 58-59. The trial court held a suppression hearing (Doc. 7-1, p. 155; Doc. 7-2, p. 82) and Parker filed post-hearing briefs (Doc. 7-1, pp. 156-184. The trial court overruled Parker's motion to suppress in its entirety. Doc. 7-1, p. 254.

The case proceeded to trial and the jury found Parker guilty on both counts and determined that $43,400 was subject to forfeiture to the State of Ohio. Doc. 7-1, pp. 255-258. At sentencing, the trial court sentenced Parker to 24 months on the weapons count and 8 years on the possession of heroin count, to be served consecutively, for a total prison term of 10 years. Doc. 7-1, p. 260. The trial court also ordered Parker to forfeit $43,400 to the state. Doc. 7-1, p. 260.

### B. Direct Appeal

On October 20, 2016, Parker, through new counsel, filed an appeal in the Ohio Court of Appeals, Eleventh District. Doc. 7-1, p. 263. He raised the following assignments of error:

> 1. The trial court erred in denying appellant's motion to suppress [] all evidence against him, in violation of []his rights pursuant to the Fourth Amendment to the United States Constitution.
>
> 2. The trial court erred, as a matter of law, by giving an incomplete and otherwise defective instruction to the jury on "constructive possession."
>
> 3. Appellant's convictions are against the manifest weight of the evidence.
>
> 4. The trial court erred by imposing consecutive sentences upon appellant.

Doc. 7-1, pp. 284-286. On August 13, 2018, the Ohio Court of Appeals affirmed Parker's convictions and sentences. Doc. 7-1, p. 340-356.

On September 21, 2018, Parker, pro se, appealed to the Ohio Supreme Court. Doc. 7-1,

p. 357.  In his jurisdictional memorandum, he raised the same four issues he raised to the Ohio

Court of Appeals.  Doc. 7-1, p. 360.  On December 12, 2018, the Ohio Supreme Court declined

to accept jurisdiction of Parker's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  Doc. 7-1, p. 413.

### C. Federal Habeas Petition

On March 12, 2019, Parker, pro se, filed his Petition for a Writ of Habeas Corpus.  Doc.

1.  He listed the following grounds for relief:

> **Ground One**: The trial court erred in denying [Petitioner's] motion to suppress all
> evidence against him, in violation of his rights pursuant to the Fourth Amendment to the
> United States Constitution.

> **Ground Two**: The trial court erred, as a matter of law, by giving an incomplete and
> otherwise defective instruction to the jury on "constructive possession."

> **Ground Three**: [Petitioner's] convictions are against the manifest weight of the
> evidence.

> **Ground Four**: The trial court erred by imposing consecutive sentences upon [Petitioner].

Doc. 1, pp. 6-10.  On June 11, 2019, Respondent filed a Return of Writ.  Doc. 7.  Parker filed a

Traverse (Doc. 8) and Respondent filed a Reply (Doc. 9).  In the Return of Writ, Respondent

argues that Parker's grounds for relief are not cognizable, procedurally defaulted, and/or fail on

the merits.  Doc. 7, pp. 18-41.

### II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

petitioner must meet certain procedural requirements in order to have his claims reviewed in

federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006).

"Procedural barriers, such as statutes of limitations and rules concerning procedural default and

exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."

*Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes

confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v.*

*Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.** Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when

7

determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.*  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review.**  In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner

must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded

jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Analysis

#### A. Ground One is not cognizable.

In Ground One, Parker argues that the trial court erred when it denied his motion to suppress.  Doc. 1, p. 6; Doc. 1-1, p. 6.  He vigorously disputes the trial court's findings—that the first police search was proper under the exigent circumstances and/or emergency aid exceptions to a search warrant requirement.  Doc. 1-1, pp. 6-17.  Respondent asserts that this claim is not cognizable.  Doc. 7, p. 18.  The undersigned agrees.

In *Stone v. Powell*, the United States Supreme Court held, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  428 U.S. 465, 494 (1976).  In order for the rule of *Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim and the presentation of that claim must not have been frustrated by failure of that mechanism.  *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982). "[T]he *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim."  *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013), cert. denied, 135 S.Ct. 1174 (2015).  Instead, when considering whether a petitioner had a

full and fair opportunity to litigate his Fourth Amendment claim, the court "asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?" *Id*. at 640.

Ohio has a mechanism in place for resolving Fourth Amendment claims; it provides a defendant the opportunity to file a pretrial motion to suppress and the opportunity to take a direct appeal from the denial of the motion to suppress. *See Riley*, 674 F.2d at 526 (finding that Ohio criminal and appellate rules provide adequate procedural mechanisms for litigation of Fourth Amendment claims). Parker availed himself of that mechanism; he filed three motions to suppress in the state trial court, had three hearings, was permitted to file multiple post hearing briefs, and took a direct appeal of the trial court's denial of his motion to suppress. *Id*.

In his Traverse, Parker reiterates his argument that his motion to suppress was wrongly denied on the merits. Doc. 8, pp. 6-9. However, he does not demonstrate that the state courts did not permit him to raise this claim, as he must do to state a cognizable claim. *See Good*, 729 F.3d at 640. And, although he generically references the duties that counsel owes a defendant (Doc. 8, p. 5), he did not raise the issue of ineffective assistance of counsel in his Petition or in his appeal to the Ohio Court of Appeals; nor does he describe, in any of his state or federal court filings, how his defense counsel purportedly failed in any duty owed him.

Ground One is not cognizable.

**B. Ground Two is not cognizable, procedurally defaulted, and fails on the merits**

In Ground Two, Parker argues that the trial court erred by giving an incomplete and defective jury instruction. Doc. 1, p. 7. He explains that, at trial, the court rejected defense counsel's proposal that the instruction for "constructive possession" should include a statement that "mere proximity is not sufficient to establish constructive possession." Doc. 1-1, p. 18. He asserts that this amounts to a due process violation. Doc. 1-1, pp. 18-19. Respondent contends

that Ground Two is a non-cognizable state law claim, it is procedurally defaulted because Parker

did not present this claim as a federal due process claim in state court, and that, in any event, it

fails on the merits.  Doc. 7, p. 23-26.  The undersigned agrees.

Ground Two is not cognizable because Parker presented this claim to the Ohio state

courts as running afoul of Ohio state law.  Doc. 7-1, pp. 298-299, 371-371.  *See Estelle v.*

*McGuire*, 501 U.S. 62, 71-72 (1991) (a claim that a jury instruction was allegedly incorrect

under state law is not cognizable in federal habeas review).  The fact that Parker only presented

this claim to the Ohio state courts as a state law violation also means he procedurally defaulted

this claim.  *See Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987) (petitioner who did not

present his jury instruction challenge to the state court as a federal constitutional claim has not

fairly presented that claim; "[T]he habeas petitioner must present his claim to the state courts as a

federal constitutional issue—not merely as an issue arising under state law." quoting *Koontz v.*

*Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.

2000).  He has not alleged cause to excuse his procedural default.  Nor has he shown that he is

actually innocent.  Although he states in conclusory fashion that he is actually innocent (Doc. 8,

p. 4), he has not cited new, reliable evidence that was not presented at trial that would support

such a claim.  *See Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995) (actual innocence "requires the

petitioner to support his allegations of constitutional error with new reliable evidence—whether

it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence—that was not presented at trial.").

Finally, Ground Two fails on the merits.  The Ohio Court of Appeals considered Parker's

claim as follows:

{¶ 32} Under his second assignment, appellant contends that the trial court erred in
instructing the jury on constructive possession. First, he contends the instruction was
flawed because it did not state that mere proximity to an item is insufficient to prove

12

constructive possession. Second, he maintains the instruction was not warranted because the state failed to present evidence that appellant was aware of the heroin or that he could exercise control over it.

{¶ 33} "'Possession' is defined as 'having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.' R.C. 2925.01(K). Possession of [any item] may be actual or constructive, and constructive possession may be established 'entirely by circumstantial evidence.' *State v. Fogle*, 11th Dist. Portage No. 2008-P-0009, 2009-Ohio-1005, ¶ 28; *State v. Swain*, 6th Dist. Erie Nos. E-11-087, E-11-088, 2013-Ohio-5900, ¶ 40-41.

{¶ 34} "'Constructive possession exists when an individual is able to exercise dominion or control over an item, even if the individual does not have the item within his immediate physical possession.' *State v. Kingland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13. 'However, the mere fact that (drugs are) located within premises under one's control does not, of itself, constitute constructive possession. It must also be shown that the person was *conscious* of the presence of the object. Without this element one could be found to be in illegal possession of (drugs) surreptitiously placed in or upon his property by another.' (Emphasis added.) (Citations omitted.) *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1992)." *State v. Hudson*, 11th Dist. Trumbull No. 2014-T-0097, 2017-Ohio-615, ¶ 45-46.

{¶ 35} As part of the jury instructions in this case, the trial court stated definitions for various legal terms. In regard to the term "possession," the trial court first quoted the basic statutory definition for that term, as set forth in R.C. 2925.01(K). As noted above, that definition provides that "possession" cannot be inferred solely from "mere access" to an item; i.e., a person must have control over the item for it to be in his possession. After stating the statutory definition, the trial court told the jury that "possession" may be actual or constructive. The court then defined "constructive possession" as occurring when a person "is able to exercise control" over an item.

{¶ 36} Given the order in which the trial court gave the definitions for the terms "possession" and "constructive possession," the jury was clearly informed that, regardless of whether the state was trying to prove "actual" possession or "constructive" possession, mere access to a thing or substance is not sufficient to establish either type of possession. Although the trial court did not use the phrase "mere proximity" in the instruction, the use of the phrase "mere access," as stated in the statutory definition of R.C. 2925.01(K), is sufficient to provide a proper statement of the controlling law. Thus, when read in context, the court's "constructive possession" instruction is valid.

{¶ 37} In regard to the separate issue of whether the constructive possession instruction is justified by the evidence, as the officers were about to enter the residence to look for injured persons, an officer saw a hand by a blind covering a window in the corner bedroom on the main floor. After the house was cleared, it was discovered that appellant was in that room and one of the three found firearms was in a closet in that room.

{¶ 38} As part of the taped telephone conversations played for the jury, appellant expressly asked whether the police found the drugs in the freezer, and also made reference to one of the firearms in the home. Accordingly, the state presented some evidence establishing that even though the firearms and drugs were not on appellant's person when he was taken into custody, he was fully aware of their presence and had access to them justifying the constructive possession instruction.

{¶ 39} Appellant's second assignment is without merit.

*Parker*, 2018 WL 3832793, at *4-5.

In his Traverse, Parker states, "the trial court failed to properly instruct the jury, therefore Parker failed to receive his guaranteed constitutional and due process rights to a fair and impartial jury trial."  Doc 8, pp. 10, 11-12.  However, he does not explain how the jury instructions given by the trial court violated his due process rights.[1]  Next, he contends, "there was no evidence indicating Parker actually exercised dominion or control over the property."  Doc. 8, p. 12.  The Ohio Court of Appeals disagreed, as noted above.  Parker has not shown that the Ohio Court of Appeals' decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

Ground Two is not cognizable, procedurally defaulted, and fails on the merits.

**C. Ground Three is not cognizable, procedurally defaulted, and fails on the merits**

In Ground Three, Parker argues that his convictions are against the manifest weight of the evidence.  Doc. 1, p. 9.  Ground Three is not cognizable because federal habeas corpus relief is available only to correct federal constitutional violations, 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010), and a claim that a conviction is against the manifest weight of the evidence rests solely on state law.  *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a

---

[1] Moreover, the undersigned notes that an omission or incomplete instruction, as alleged to have occurred here, is less likely to violate due process than a misstatement of the law.  *Beltowski v. Brewer*, 766 Fed. App'x 218, 221 (March 12, 2019) (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

14

question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)).  Also, his claim is procedurally defaulted because he failed to present it to the state courts as a federal constitutional claim, rather than a state law claim.  *See Prather*, 822 F.2d at 1421; *McMeans*, 228 F.3d at 681.  As above, he has not alleged cause to excuse his procedural default or demonstrated actual innocence.

In his brief in support of his Petition, and in his Traverse, Parker attempts to tie in a sufficiency of the evidence claim to his manifest weight of the evidence claim.  Doc. 1-1, p. 20; Doc. 8, p. 13.  However, because Parker presented this claim to the Ohio Court of Appeals only as a manifest weight of the evidence claim (Doc. 7-1, pp. 299-302), his belated attempt to morph this claim into a sufficiency of the evidence claim is unavailing.

Nevertheless, for the sake of completeness, the undersigned notes that, even if the Court were inclined to consider Parker's manifest weight claim as a sufficiency of the evidence claim,[2] such a claim would fail on the merits.  The Ohio Court of Appeals considered Parker's claim as follows:

> {¶ 40} Under his next assignment, appellant asserts that his convictions are against the manifest weight of the evidence. He submits that he should not have been convicted of either offense when there was no evidence that he resided at 3126 Starlite Avenue.
>
> {¶ 41} "A court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of the witnesses. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 387 (1997). The court determines whether, in resolving conflicts in the evidence and deciding witness credibility, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id*. The discretionary power to grant a new trial should only be exercised in the exceptional case in which the evidence weighs heavily against the conviction. *Id*. Witness credibility rests solely with the finder of fact, and an appellate court is not permitted to substitute its judgment for that of the jury. *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). The role

---

[2]  In an unpublished decision, *Nash v. Eberlin*, 258 Fed. App'x 761, 764-765 (6th Cir. 2007), the Sixth Circuit found that when a petitioner had alleged a manifest weight claim in the Ohio courts but not a sufficiency of the evidence claim, the federal district court could consider a sufficiency of the evidence claim because, when the state court found the petitioner's convictions supported by substantial weight, it implicitly found the convictions supported by the sufficiency of the evidence.

of the reviewing court is to engage in a limited weighing of the evidence in determining whether the state properly carried its burden of persuasion. *Thompkins*, *supra*, at 390, 678 N.E.2d 541." *State v. Irby*, 11th Dist. Trumbull No. 2015-T-0018, 2015-Ohio-5467, ¶ 45.

{¶ 42} There is no dispute that appellant did not own the residence in question. Nevertheless, there was evidence from which the jury could find that appellant was living there. First his wallet and ID were found in the master bedroom. Second, the officers found a "Direct TV" bill in one of the bedrooms addressed to him at that address. Third, appellant made statements during the taped telephone conversations establishing that he was well aware of at least one gun, heroin, cash, and other incriminating things as already discussed. Moreover, neither conviction turns on whether he lived there. His knowledge and presence along with the other discussed facts support the convictions.

{¶ 43} Therefore, the jury did not lose its way in finding him guilty of the charged offenses.

{¶ 44} As a separate argument under this assignment, appellant asserts that the state committed multiple mistakes in investigating the case and providing discovery. For example, he notes that the police officers did not attempt to obtain fingerprints from the three weapons. However, appellant fails to explain how this or any other perceived shortcomings renders the convictions against the manifest weight. His third assignment of error also lacks merit.

*Parker*, 2018 WL 3832793, at *5-6.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Under this standard, deference is due the trier of fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

"Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence"). On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Coleman v. Johnson*, 566 U.S. 650 (2012). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Parker complains that there were three other individuals in that house that night and that only he was charged. Doc. 1-1, p. 22; Doc. 8, p. 16. He does not dispute, however, that only his wallet and ID were found in the master bedroom and that, in another bedroom, police found a Direct TV bill addressed to him at that address. This is evidence that he was living in the house. He complains that the weapons that were found in the house were not tested to determine whether they were recently fired (Doc. 1-1, p. 23; Doc. 8, p. 16); but Parker was not charged with firing a weapon, he was charged with possession. Relatedly, who may have fired or handled the guns does not go to the question of whether Parker possessed the guns. He states that "contraband" seized from the house was comingled with contraband seized from a neighbor's house; he does not identify this purported contraband or articulate any argument based on this assertion. In short, the Ohio Court of Appeals' determination was not unreasonable; Ground Three fails on the merits. *See Brown*, 567 F.3d at 205.

### D. Ground Four is not cognizable, procedurally defaulted, and fails on the merits

In Ground Four, Parker argues that the trial court erred when it ordered his sentences to

17

be served consecutively.  Doc. 1, p. 10.  He contends that his consecutive sentences violated Ohio law.  Doc. 1-1, pp. 23-25.  This ground is not cognizable because Parker is challenging the application of Ohio law.  *See Estelle*, 502 U.S. at 67-68; *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (an alleged violation of state sentencing laws is not cognizable on federal habeas review, citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)).  Additionally, his claim is procedurally defaulted because he failed to present it to the state courts as a federal constitutional claim, rather than a state law claim (Doc. 7-1, pp. 302-303); he has not alleged cause to excuse his procedural default; and he had not demonstrated actual innocence.

Moreover, this claim fails on the merits.  Parker concedes that the trial court made all the necessary findings to impose consecutive sentences.  Doc. 1-1, p. 25; Doc. 8, p. 19.  However, he asserts that the trial court was unreasonable when it weighed the seriousness and recidivism factors in R.C. 2929.14(C)(4).  Doc. 8, p. 20.  He also argues that "certain findings" made by the trial court are not supported by the record but does not identify what findings he is objecting to. Doc. 1-1, p. 25; Doc. 8, p. 19.  He contends that the trial court "placed great emphasis upon a finding that Parker was involved in this incident in which a great deal of gun play allegedly occurred" but there is no evidence that Parker was involved in the shootout.  Doc. 1-1, pp. 25-26; Doc. 8, pp. 19-20.  The Ohio Court of Appeals considered Parker's claims:

{¶ 45} Under his final assignment, appellant challenges the factual findings supporting imposition of consecutive sentences. He maintains that the court's ruling is based in part upon an unsupported finding that he was involved in the exchange of gunshots, a crime for which he was not charged, for which there was no evidence, and that the jury did not consider.

{¶ 46} Appellate review of a felony sentence is governed by R.C. 2953.08(G)(2):

{¶ 47} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

{¶ 48} "The appellate court may increase, reduce, or otherwise modify a sentence that is

appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶ 49} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶ 50} "(b) That the sentence is otherwise contrary to law."

{¶ 51} The imposition of consecutive prison terms for multiple felony offenses is governed by R.C. 2929.14(C)(4), one of the five statutory provisions referenced in R.C. 2953.08(G)(2)(a). As a result, the imposition of consecutive terms will be affirmed on appeal unless this court clearly and convincingly finds that the record fails to support the trial court's findings under R.C. 2929.14(C)(4).

{¶ 52} "It is important to note 'that the clear and convincing standard used by R.C. 2953.08 (G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings.' [*State v.*] *Venes*, 2013-Ohio-1891, 992 N.E.2d 453, at ¶ 21. 'In other words, the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.' *Id.*" *State v. Rodeffer*, 2nd Dist. Montgomery Nos. 25574, 25575, and 25576, 2013-Ohio-5759, ¶ 31.

{¶ 53} Pursuant to R.C. 2929.14(C)(4), a trial court "may" sentence the offender to consecutive prison terms if it finds: (1) such terms are "necessary to protect the public from future crimes or to punish the offender"; (2) such terms "are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one of three enumerated alternatives exist. In our case, the trial court found two alternatives present:

{¶ 54} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 55} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 56} Regarding the three R.C. 2929.14(C)(4) requirements, appellant makes the general assertion that the trial court's findings are not supported by the evidence. However, he does not present specific argument concerning any of the three requirements. Instead, he argues that the trial court predicates its decision to impose consecutive sentences for unrelated reasons. At sentencing the trial court said:

{¶ 57} "I will say, you know, that when you look at the totality of this case, looking back into your background, discharging of a firearm into a habitation, but for the grace of God, nobody died in that situation or else we wouldn't be here today. The other thing that I think about with respect to all these weapon charges is in our case here, there was gun play all over the street there. There were shots fired into the house where children live in the house that you were in. Shots fired into a car there that you were in. And I will tell you this. Based on the facts and the background, shots weren't fired in that house because you were a good citizen. There were other reasons for it. There's gun play all over the city. People are frightened. They are fleeing the city and moving to other places because of people like you."

{¶ 58} The trial court, however, did not, as appellant contends, punish him for a crime that he did not commit by recounting the undisputed gunfire precipitating police response. The trial court never concluded that appellant fired any shots, and there is no question that the risk of gunfire increases with drug activity, a relevant sentencing consideration.

{¶ 59} Alternatively, while a trial court may not consider a crime neither charged nor proven when it is sentencing an offender, the wrongful consideration of an uncharged offense will be deemed harmless when other factors overwhelmingly support the imposed sentence. *State v. Stambolia*, 11th Dist. Trumbull No. 2003-T-0053, 2004-Ohio-6945, ¶ 26.

{¶ 60} Here, the trial court found all three requirements for imposition of consecutive sentences under R.C. 2929.14(C)(4) satisfied. Furthermore, there is considerable evidence supporting the trial court's findings on all three requirements. In regard to the third requirement, there is no dispute that appellant has a significant prior criminal record, including convictions for trafficking in cocaine, possession of cocaine, improper handling of a firearm, having weapons while under a disability, trafficking in marijuana, and trafficking in heroin.

{¶ 61} Given that the trial court's decision to impose consecutive sentences could be predicated solely upon its findings under R.C. 2929.14(C)(4), even if the trial court did improperly consider an uncharged offense, the error was harmless. Thus, appellant has failed to establish that the record does not clearly and convincingly support the trial court's decision to impose consecutive sentences. His fourth assignment of error is not well-taken.

*Parker*, 2018 WL 3832793, at *6-7.  Parker disagrees with the Ohio Court of Appeals' decision

but does not explain why be believes it is unreasonable.  It is not unreasonable.  Ground Four

fails on the merits.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Parker's habeas Petition be **DENIED**.

Dated: September 4, 2019

*/s/ Kathleen B. Burke*

Kathleen B. Burke
United States Magistrate Judge

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).